IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | | No. 3:15-CR-00280 |
| v. | | (Judge Brann) |
| EDWARD JETER, | | |
| Defendant. | | |

## MEMORANDUM OPINION

### MARCH 23, 2021

Currently pending before the Court is Edward Jeter's motion for reconsideration of this Court's prior Order denying without prejudice his motion for compassionate release.[1] This Court denied Jeter's motion for compassionate release after concluding that he had not exhausted his administrative remedies, as required by 18 U.S.C. § 3582(c)(1)(A).[2] Jeter now moves for reconsideration and argues that this Court should find that exhausting his administrative remedies would be futile, as he submitted an administrative request, and that request was denied.[3]

## I.     BACKGROUND

In 2015, Jeter was charged in a criminal information[4] with receipt of child pornography, in violation of 18 U.S.C. § 2252(a)(2).[5] Jeter pled guilty, without the

---

[1]   Doc. 88.
[2]   Doc. 85.
[3]   Doc. 88 at 2-4.
[4]   Jeter waived his right to indictment. Doc. 19.
[5]   Doc. 16.

benefit of a plea agreement, to that charge and was sentenced to 78 months' imprisonment.[6] The Court imposed that sentence for several reasons. First, the Court noted the seriousness of Jeter's crime of conviction, which occurred over a lengthy period of time and involved images of young children being abused; in the Court's view, there was "[no]thing worse than" Jeter's offense.[7] The Court also considered Jeter's lack of a serious criminal history, his upbringing, and the need to deter others from committing similar offenses.[8]

In December 2020, Jeter filed a motion for compassionate release, asserting that he is obese, which places him at a higher risk of serious illness or death should he contract COVID-19.[9] The Government responded that Jeter's motion for compassionate release was premature because he failed to exhaust his administrative remedies and, in any event, the motion was without merit.[10] This Court concluded that Jeter's motion must be dismissed without prejudice because he had failed to exhaust his administrative remedies.[11] Jeter has now filed this motion for reconsideration and, for the following reasons, the motion for reconsideration will be granted, but his motion for compassionate release will be denied.

---

[6]   Docs. 25, 44.
[7]   Doc. 65 at 18.
[8]   *Id.* at 19-20.
[9]   Doc. 79 at 8.
[10]   Doc. 81.
[11]   Doc. 85.

## II.    DISCUSSION

To properly support a motion for reconsideration, a movant must demonstrate "at least one of the following: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice."[12] Arguably, Jeter has demonstrated none of three grounds for reconsideration, as there is no intervening change in controlling law, no new evidence, and it is undisputed that Jeter had not exhausted his administrative remedies at the time the Court dismissed his motion for compassionate release.

It is, however, apparent to the Court that Jeter has now exhausted his administrative remedies.[13] In the interests of judicial economy, the Court will therefore grant Jeter's motion for reconsideration and consider the merits of his motion for compassionate release.

Turning to the merits of Jeter's underlying motion for compassionate release, the Court concludes that the motion must be denied. "[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific

---

[12]  *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 87 (3d Cir. 2017) (ellipsis and internal quotation marks omitted).

[13]  *See United States v. Harris*, 973 F.3d 170, 171 (3d Cir. 2020) (holding that a movant may file a motion for compassionate release with the district court "thirty days after the warden receives his request" for home confinement, even if the movant did not further appeal the denial of any such request). Because Jeter filed his request with the warden at his place of confinement on January 15, 2021, his administrative remedies were effectively exhausted on February 15, 2021. Doc. 88-1 at 1.

authorization."[14] Congress has provided courts with the authority to modify sentences through its enactment of 18 U.S.C. § 3582(c)(1)(A). That statute permits courts to reduce an inmate's sentence if the inmate has exhausted his administrative remedies and if, as relevant here, "extraordinary and compelling reasons warrant such a reduction."[15] Courts must also consider the relevant § 3553(a) sentencing factors[16] and whether "the defendant is . . . a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)."[17]

Congress has not defined the term "extraordinary and compelling." However, the Sentencing Guidelines define the term to include a terminal illness, or any non-terminal illness "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[18] Nevertheless, this definition is not authoritative, as "[t]he Commission has not updated its policy statement to account for the changes imposed by the First Step Act, and the policy statement is now clearly outdated."[19] Thus, while "the Policy Statement provides useful guidance for district courts in assessing a defendant's eligibility for compassionate release, . . . it does not constrain a court's independent assessment of whether 'extraordinary and compelling reasons'

---

[14] *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007).
[15] 18 U.S.C. § 3582(c)(1)(A)(i).
[16] *Id.*
[17] U.S. Sentencing Guidelines Manual § 1B1.13(2).
[18] USSG § 1B1.13, cmt. n.1(A).
[19] *United States v. Rodriguez*, 451 F.Supp.3d 392, 397 (E.D. Pa. 2020).

warrant a sentence reduction under § 3852(c)(1)(A)."[20] "The burden rests with the defendant to show that a reduction in sentence is proper."[21]

Even assuming that Jeter has met his burden of establishing that extraordinary and compelling reasons weigh in favor of compassionate release,[22] the Court concludes that any such reasons are outweighed by the relevant § 3553(a) sentencing factors and danger that Jeter poses to the community.

The relevant sentencing factors to consider under § 3553(a) include, *inter alia*, (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) "the need for the sentence imposed . . . to protect the public from further crimes of the defendant"; (3) "the need for the sentence imposed . . . to afford adequate deterrence to criminal conduct"; and (4) "the need for the sentenced imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense."[23]

---

[20]   *United States v. Guzman*, No. 3:16-CR-85, 2020 WL 4515476, at *3 (M.D. Pa. Aug. 5, 2020) (brackets and internal quotation marks omitted).

[21]   *United States v. Rengifo*, No. CV 1:13-CR-00131, 2020 WL 4206146, at *2 (M.D. Pa. July 22, 2020).

[22]   The Government acknowledges that Jeter is obese, with a body mass index of 33.8. Doc. 81 at 21. This is ordinarily sufficient to demonstrate that extraordinary and compelling reasons exist to grant Jeter's motion, as obesity renders individuals more susceptible to serious illness or death should they contract COVID-19. *United States v. Barlow*, No. 4:19-CR-00155-01, 2020 WL 6445988, at *3 (M.D. Pa. Nov. 3, 2020). The Government argues that extraordinary and compelling reasons nevertheless do not exist because Jeter contracted COVID-19 and recovered after displaying only minor symptoms. Doc. 81 at 22-25. The Court need not resolve this issue, as it will deny the motion on other grounds.

[23]   18 U.S.C. § 3553(a).

As to the nature and circumstances of the offense and the history and characteristics of the defendant, the Court notes that the offense was incredibly serious. For an extended period of time, Jeter downloaded 94 videos and 2,163 images of child pornography—images and videos that included graphic molestation of children as young as two years old.[24] Although Jeter did not produce or distribute that pornography, "all child pornography 'feeds the child pornography market[,] supports demand in the national market[,] and is essential to its existence.'"[25] Thus, in a very real sense, "[c]hildren are exploited, molested, and raped for the prurient pleasure of [Jeter] and others who support suppliers of child pornography."[26] Jeter's actions were not only abhorrent, but contributed to the suffering of numerous children who were victimized during the production of the child pornography that Jeter downloaded.

As to Jeter himself, although he does not have a lengthy criminal history, he does have a prior conviction for criminal possession of a weapon.[27] Moreover, Jeter appears to have had an ordinary childhood with no abuse, he enjoyed the support of his mother, and he earned his GED.[28] There is nothing in Jeter's history that would

---

[24]   Doc. 33 at 4-6.
[25]   *United States v. Lee*, No. 4:14-CR-00254, 2020 WL 127996, at *9 (M.D. Pa. Jan. 10, 2020) (quoting *United States v. Holston*, 343 F.3d 83, 90 (2d Cir. 2003) (brackets and ellipsis omitted).
[26]   *United States v. Goff*, 501 F.3d 250, 259 (3d Cir. 2007).
[27]   Doc. 33 at 8-9, 11.
[28]   *Id.* at 9-11.

explain his actions and, indeed, his history would suggest that Jeter should have known better than to engage in this conduct.

As to the need to protect the public from further crimes of the defendant, the Court finds that requiring that Jeter serve his full incarcerative sentence is necessary. As noted previously, Jeter downloaded child pornography for a lengthy period of time and gratified himself with those images and videos. This contributed to the abuse of those young children, and suggests that Jeter may be a danger to young children.[29]

Third, given the severity of the underlying crime, providing adequate deterrence by having Jeter serve the entirety of his sentence is necessary. Finally, an early release would not adequately reflect the seriousness of the offense, promote respect for the law, or provide just punishment for the offense. Jeter is already serving a sentence that is below the bottom of the applicable Sentencing Guidelines range, and requiring that he serve the full term of his sentence is necessary to achieve these sentencing goals.

After weighing the applicable considerations, the Court concludes that the relevant § 3553(a) factors—most notably the extremely serious nature of the offense—outweigh any possible extraordinary and compelling reasons that could

---

[29]   For the same reasons, the Court finds that Jeter is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." USSG § 1B1.13(2)

justify granting compassionate release. Accordingly, the Court will deny Jeter's motion for compassionate release.

## III.   CONCLUSION

For the foregoing reasons, Jeter's motion for reconsideration will be granted, but his motion for compassionate release will be denied.

An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge